In re Robert Melvin **KRAMER**, Debtor.

**Robert Melvin Kramer, Plaintiff,**

v.

**United States of America, Defendant.**

**Bankruptcy No. 93–31134–BKC–SHF.**

**Adversary No. 95–0152–BKC–SHF–A.**

United States Bankruptcy Court,
S.D. Florida,
West Palm Beach Division.

March 10, 1999.

See also 89 T.C. 849, 1987 WL 45307.

Charles I. Cohen, Furr and Cohen, Boca Raton, FL, for plaintiff.

Robert J. Higgins, U.S. Department of Justice, Washington, D.C., for defendant.

### ORDER ON REMAND

STEVEN H. FRIEDMAN, Bankruptcy Judge.

This matter came before the Court upon the Order Vacating Entry of Final Judgment entered by the United States District Court for the Southern District of Florida. The District Court reversed this Court's order finding that the taxes owed to the United States by the Debtor, Robert Kramer (the "Debtor"), were non-dischargeable pursuant to 11 U.S.C. § 523(a)(1)(C). The District Court also instructed this Court to make "special factual findings as to the Debtor's specific intent in employing [First Western's tax] scheme to avoid paying taxes for the relevant years." As pointed out by the District Court,

In order to bar dischargeability of three-year or older loans under the fraud exception, the government must demonstrate that the debtor 'acted with specific intent to evade a tax believed to be owing.' This, in turn, requires a finding that '(1) the Debtor had knowledge of

the falseness of the return, (2) the Debtor had an intent to evade the taxes, and (3) there was an underpayment of taxes.' (Citations omitted)

In its Memorandum Opinion, this Court relied heavily upon the findings of *Freytag v. Commissioner*, 89 T.C. 849, 1987 WL 45307 (1987), *aff'd*, 904 F.2d 1011 (5th Cir. 1990), *aff'd*, 501 U.S. 868, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991). However, *Freytag*, a test case on the issue of whether certain tax deductions involving the purchase and sale of forward contracts, merely addressed the third element, i.e., whether there was an underpayment of taxes. The third element is an uncontested issue in light of the Stipulation of Settlement entered into by the Debtor and the United States in 1991. Thus, this Court was required to review the evidence and determine whether the Debtor had knowledge of the falseness of the return and whether the Debtor had an intent to evade taxes.

Certain findings of fact made by this Court in its Memorandum Opinion remain relevant and are reiterated below. In 1978, the Debtor joined with a man known as Sidney Samuels in an investment advisory company that came to be known as Samuels, Kramer & Company ("SK & C"). Samuels also owned a company known as First Western Government Securities ("First Western"). First Western was a dealer in government securities. Eventually, First Western assumed the functions of SK & C. The salient facts of the transactions in which these companies were involved are thoroughly explained by the United States Tax Court in *Freytag v. Commissioner*, 89 T.C. 849, 1987 WL 45307 (1987). Some facts are highlighted in this opinion.

First Western marketed portfolios of forward contracts for securities of the Government National Mortgage Association, (securities known as "Ginnie Maes"), and the Federal Home Loan Mortgage Corporation, (securities known as "Freddie Macs"). These portfolios consisted of short and long positions in the Ginnie Maes and Freddie Macs forward contracts.

The technique used by First Western theoretically resulted in its customers both deferring and converting ordinary income into long term capital gain. First Western engaged in many unorthodox practices which enabled it to offer to its customers enormous tax benefits compared to the amounts of their "margin" deposits and without increasing First Western's risk of loss. In fact, First Western could "fine tune" its program to reach any result. Each customer's portfolio was constructed so as to achieve the desired tax loss. The end result of these transactions was that First Western customers would report tax losses that were seven to ten times larger than their initial investment. The Tax Court in *Freytag* found the transactions between First Western and its customers to be "illusory and fictitious and not bona fide transactions." *Id.* at 875.

The Debtor was one of First Western's customers to take advantage of these "illusory and fictitious" tax losses. The Debtor reported $69,208 in losses from First Western securities transactions for 1978, $145,348 in losses for 1979, and $730,948 in losses for 1980. The IRS issued a notice of deficiency to the Debtor for these tax years reflecting a deficiency of $23,614 in 1978, $66,074 in 1979, and $612,927 in 1980. The IRS contends that, as an officer of First Western and the "principal architect of a scheme" that created "artificial tax losses", the Debtor intended to defraud the United States of taxes which he owed. The IRS also points to a 1980 conversation between John Walsh and the Debtor, portions of which were memorialized by John Walsh, wherein the Debtor stated that Samuels was not "hedging" and was running a sham. The Debtor testified at trial that he made those comments when he was angry with Samuels. The Debtor further testified that at the time of the transactions he believed the transactions to be legitimate. He stated that a law firm called R.P. Rhoades gave an opinion that the tax trades proposed by First Western were valid tax right-offs. However, the Debtor did not produce a copy of this opinion.

■ The Government argues that because the Debtor was a principal of First Western and because First Western used his computer programs, he knew, or should have known, at the time he filed his tax returns in 1979, 1980 and 1981, that the deductions or losses he claimed were illusory and fictitious and thus, the returns were fraudulent. The Court finds the evidence that the Debtor (1) was a principal of First Western, and (2) established the computer program to track the trading in government securities, to be insufficient to establish that the Debtor willfully or fraudulent evaded taxes. Consequently, the Court finds that the taxes owed by the Debtor to the United States are dischargeable.

A separate final judgment will be entered in accordance herewith.